IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JACQUELINE MYLUM,

    Plaintiff,

v.                                        Civil Action No. 3:11cv418

DILLARD'S INC.,

    Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant Dillard's Inc.'s ("Dillard's") Motion for Summary Judgment. (Docket No. 15.) This motion has been fully briefed. (Docket Nos. 16, 25, 30.) Neither party requested a hearing, and the Court has determined that oral argument would not aid the decisional process. Accordingly, this matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1441, 1332,[1] and 636(c).[2] For the reasons that follow, the Court will GRANT Dillard's Motion for Summary Judgment.[3]

---

[1] The amount in controversy exceeds $75,000, and diversity of citizenship exists. 28 U.S.C. § 1332. Plaintiff Jacqueline Mylum is a citizen of Virginia, and Dillard's is a Delaware corporation with its principal place of business in Arkansas. (Notice of Removal ¶¶ 9-10.) (Docket No. 1.)

[2] On August 5, 2011, pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a magistrate judge, and the Honorable Henry E. Hudson reassigned the case to the undersigned Magistrate Judge. (Docket Nos. 5, 6.)

[3] In preparation for trial, the parties have also filed three motions in limine. (Docket Nos. 20, 22, 27.) Because the Court enters summary judgment in favor of Dillard's, the Court will DENY AS MOOT the motions in limine.

## I. Factual and Procedural Background

### A. Undisputed Facts

On October 5, 2010, between approximately 11:00 and 11:30 a.m., Mylum and her aunt arrived at the Dillard's store located at Virginia Center Commons, 10101 Brook Road, Glen Allen, Virginia. Mylum and her aunt entered Dillard's through the mall entrance and browsed the dresses in the women's department immediately on the left. Mylum had shopped at this Dillard's store at least once a month and was familiar with the store, including the shoe department. Aside from her purse, Mylum carried nothing in her hands while shopping.

Mylum eventually left her aunt in the women's department and went to the shoe department in Dillard's. Dillard's displayed shoes on metal shelving units approximately six feet tall with flat shelves. Mylum admits that the store was well lit, that she had no trouble seeing the details of the shoes, and that she could see through the shelves to the other side. Mylum did not notice any other people in the shoe department at that time.

Mylum spent no more than five minutes in the shoe department, "went around the shoe shelves," and then decided to return to the women's department to meet her aunt. (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp.") Ex. 2, Deposition of Jacqueline Mylum ("Mylum Dep.") 39:21.) In the process of returning to the women's department, Mylum walked down an aisle of the shoe department, looking at the shoes on display. As Mylum reached the end of the aisle, she turned right while still looking at shoes on the upper shelves and kicked a v-shaped mirror located at the end cap of the aisle. She looked down, noticed that the mirror was about to fall, and reached down to grab the mirror. In doing so, she lost her balance and fell, injuring her

shoulder. Mylum admits she would not have fallen had she not reached down to stop the mirror from falling.

Although she had never viewed a pair of shoes in a mirror at this Dillard's store and had never seen a similar free-standing, v-shaped mirror, Mylum describes the mirror at issue as "one of those mirrors that you look at your shoes in." (Def.'s Mem. Supp. Ex. 3, Declaration of Sydnia F. Morgan Ex. B, Transcript of Recorded Statement of Jacqueline Mylum 17:12-13.) The mirror, framed in dark, stained wood, contrasted with the light carpet and metal shelving and stood no more than knee-high and less than two feet tall. Mylum admits that she did not see the mirror prior to her fall because she was looking at shoes on the upper shelves. Although partially obscured by the shelving, Mylum admits that the mirror was visible and in plain sight from the direction she had traveled[4] and from other locations in the shoe department.

B. **Procedural History**

After her fall, Mylum filed a complaint in the Circuit Court of the County of Henrico against Dillard's, seeking $250,000 in compensatory damages. Mylum asserts that Dillard's "negligently allowed a small mirror to be placed in an [a]isle down which patrons of the store

---

[4] Dillard's submitted photographs of the accident scene, and Mylum does not challenge the admissibility of these photographs. (See Def.'s Mem. Supp. Ex. 4, Declaration of Jeffrey D. McMahan, Jr. Ex. B, Mylum Dep. Ex. 3-1 through 3-5.) Mylum argues that she merely admitted that the mirror was visible and in plain sight in the photographs. However, Mylum also admitted that one photograph accurately depicted the path she traveled immediately before the accident and another accurately depicted the mirror and its placement in relation to the shelving unit. Mylum has failed to create a genuine and material factual dispute about whether the mirror was visible and in plain sight.

Mylum also contends in briefing that only a small portion of the mirror could be seen. Mylum, however, admitted that the mirror was visible and in plain sight even when viewed between the shelves. Photographs of the scene, authenticated by Mylum, reveal the same. Based on the undisputed evidence, the mirror was visible and in plain sight.

customarily passed while shopping, although [Dillard's] knew, or in the exercise of reasonable care, should have known that it posed a danger to the patrons." (Compl. ¶ 4.) (Docket No. 1-1.) Dillard's timely filed an answer, asserting the defense of contributory negligence. On June 30, 2011, Dillard's filed a Notice of Removal in this Court.

Dillard's now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), arguing that Mylum was contributorily negligent as a matter of law.[5] In response, Mylum contends that a genuine issue of material fact exists as to whether she was contributorily negligent, precluding summary judgment.

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is

---

[5] Dillard's also moves for summary judgment based on the argument that Mylum cannot demonstrate the existence of a hazardous condition or that the mirror foreseeably posed a risk of danger. Because the Court grants summary judgment in Dillard's favor based on Mylum's contributory negligence, the Court need not reach these arguments.

4

reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled to have 'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

### III. Analysis

#### A. Applicable Law on Contributory Negligence

A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 436 (E.D. Va. 2005). In Virginia, to establish a prima facie negligence claim, a plaintiff bears the burden of proving "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *see also Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951). As the Supreme Court of Virginia has articulated, "[t]he rules applicable to slip-and-fall cases are well settled." *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990).

> "The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner]."

5

*Id.* (*quoting Colonial Stores v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962)) (alterations in original). However, "'[s]uch notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his [or her] own safety.'" *Fultz v. Delhaize Am., Inc.*, 677 S.E.2d 272, 274 (Va. 2009) (*quoting Knight v. Moore*, 18 S.E.2d 266, 269 (Va. 1942)). If it appears that the plaintiff failed to exercise reasonable care and that such failure was a contributing cause of the accident, the plaintiff is guilty of contributory negligence and is barred from recovering against the defendant. *Tazewell Supply Co. v. Turner*, 189 S.E.2d 347, 349 (Va. 1972).

The Supreme Court of Virginia has recently "recounted that '[c]ontributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his or her own safety under the circumstances. The essential concept of contributory negligence is carelessness.'" *Fultz*, 677 S.E.2d at 275 (*quoting Moses v. Sw. Va. Transit Mgmt. Co.*, 643 S.E.2d 156, 159-60 (Va. 2007)) (alteration in original). "When, as here, the issue of the plaintiff's contributory negligence arises from the plaintiff's injury by an open and obvious dangerous condition, the plaintiff has the burden to show conditions outside herself which prevented her seeing the dangerous condition or which would excuse her failure to observe it." *Id.* (*citing S. Floors & Acoustics, Inc. v. Max-Yeboah*, 594 S.E.2d 908, 910-11 (Va. 2004)). Although the Supreme Court of Virginia has "specifically declined to hold that, as a matter of law, a pedestrian's failure to look down while stepping forward must constitute contributory negligence in every case," *Little Creek Inv. Corp. v. Hubbard*, 455 S.E.2d 244, 246 (Va. 1995), the court has nonetheless held that "[a] person who trips and falls over an open and obvious condition or defect is guilty of contributory negligence

as a matter of law." *Scott v. City of Lynchburg*, 399 S.E.2d 809, 810 (Va. 1991); *see also Gottlieb v. Andrus*, 104 S.E.2d 743, 747 (Va. 1958).

Whether an alleged dangerous condition is open and obvious, and likewise, whether an invitee failed to exercise ordinary care for his or her own safety, may, under certain circumstances, constitute jury questions. *Scott*, 399 S.E.2d at 810; *Knight*, 18 S.E.2d at 270. However, where no conflict exists in the evidence, or where reasonable persons cannot disagree as to the inferences to be drawn from the evidence presented, the Court may decide the issue in lieu of a jury. *Fultz*, 677 S.E.2d at 275; *Knight*, 18 S.E.2d at 270.[6]

### B. Analysis of Factually Similar Cases

The Court finds *Tazewell Supply Co. v. Turner* to be factually indistinguishable from the case at bar. 189 S.E.2d 347 (Va. 1972). In *Tazewell Supply Co.*, the plaintiff, while shopping in a well-lit store, tripped over a cardboard box as she made a right-hand turn from the main aisle into a cross aisle. *Id.* at 348-349. The box was twelve to fourteen inches high and wide and was a different color than the floor of the store. *Id.* at 349. The plaintiff admitted that she would

---

[6] Citing numerous cases, Mylum contends that the issue of whether the mirror was open and obvious and whether she was contributorily negligent should be submitted to the jury. The cases relied upon by Mylum, however, stand for the unremarkable proposition that a case should go to the jury when material facts are in dispute or when reasonable minds may differ as to the inferences to be drawn from the evidence. *See, e.g., O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997) (finding that bolts of fabric leaning against a table did not as a matter of law constitute an open and obvious falling hazard); *Little Creek Inv. Corp.*, 455 S.E.2d at 248 (finding that issue of contributory negligence was properly submitted to the jury due to conflicting evidence about weather conditions, distractions, and objects obstructing the plaintiff's view); *Culpepper v. Neff*, 134 S.E.2d 315, 317-319 (Va. 1964) (finding that conflicting evidence regarding lighting conditions, plaintiff's familiarity with the stairwell, and the obviousness of the dangerous condition created a jury question); *Knight*, 18 S.E.2d at 269-70 (finding the issue of contributory negligence to be a jury question due to conflicting evidence about the appearance of the dangerous condition, the lighting of the area in which the accident occurred, and the manner in which the plaintiff approached the dangerous condition). Summary judgment is appropriate in this matter given the absence of material factual disputes and because reasonable minds cannot differ as to the inferences to be drawn from those facts.

have seen the box had she been looking, but instead she was looking at a merchandise display. *Id.* at 348, 350. The Supreme Court of Virginia determined that the box was open and obvious and held that the plaintiff was contributorily negligent as a matter of law. *Id.* at 350.

Similarly, in *Gottlieb v. Andrus*, the plaintiff, while shopping in a well-lit store, tripped over boxes on the floor. 104 S.E.2d at 745. The plaintiff admitted that she did not see the boxes because she was not looking at the floor, but instead was looking along the cereal counter. *Id.* The Supreme Court of Virginia found that the boxes constituted an open and obvious danger. *Id.* at 747. The court further stated:

> She could not, in the exercise of ordinary care, close her eyes, which was the equivalent of what she did, and walk down this aisle without regard to open and obvious articles in it which would have been apparent to her had she looked even casually on entering the aisle or at any time before she fell.

*Id.* In reversing the jury verdict for the plaintiff, the court found that the plaintiff's contributory negligence barred her recovery as a matter of law. *Id.*

In *Snyder v. Ginn*, the plaintiff injured herself at a store by walking into glass doors. 116 S.E.2d 31, 32 (Va. 1960). The plaintiff admitted that she could have seen the doors had she been looking straight ahead, but instead she was looking away toward a jewelry counter. *Id.* The Supreme Court of Virginia found that the glass doors "were completely open and obvious to any person who was looking in their direction" and that the plaintiff "would not have suffered the injury sustained by her had she exercised ordinary care in looking ahead as she started to walk from the store." *Id.* at 33. The court set aside the jury verdict for the plaintiff and found the plaintiff contributorily negligent as a matter of law. *Id.*

Further, in factually similar cases, numerous district courts within this circuit have entered summary judgment in favor of the defendant based on the plaintiff's contributory

8

negligence in tripping over an open and obvious condition. *See, e.g., Cameron v. K Mart Corp.*, No. 3:09cv81, 2010 WL 2991014, at *1, 4 (W.D. Va. July 30, 2010) (finding the plaintiff contributorily negligent in tripping over a long, flat box on the floor as she walked toward merchandise); *Salyers v. Lowe's Home Ctrs., Inc.*, No. 1:06cv104, 2007 WL 1189488, at *1, 4 (W.D. Va. Apr. 20, 2007) (Report and Recommendation adopted by 2007 WL 1472069 (W.D. Va. May 18, 2007)) (finding the plaintiff contributorily negligent in tripping over pallet of boxes when she stepped backwards to look at light fixtures displayed overhead); *England v. Food Lion, LLC*, No. 6:05cv2, 2006 WL 893839, at *1-2 (W.D. Va. Mar. 31, 2006) (finding the plaintiff contributorily negligent in tripping over a three-tiered basket as she turned left while looking at a merchandise display); *see also Bishop v. Lowe's Home Ctrs., Inc.*, 32 F. App'x 687, 688-89 (4th Cir. 2002).

### C. Mylum Was Contributorily Negligent as a Matter of Law

Similar to the cases discussed above, the undisputed facts of this case lead to the conclusion that the mirror constituted an open and obvious danger and that Mylum was contributorily negligent as a matter of law.[7] Mylum admits that the store was well lit and that she had no difficulty seeing. A photograph, which Mylum testified accurately portrayed the mirror she tripped over and its placement in relation to the shelves, reveals that the mirror was framed in dark, stained wood which stood in contrast with the light carpet and metal shelving. The mirror stood less than two feet tall and about knee high. Mylum admits that she did not see the mirror prior to her fall *because* she was looking at shoes on the upper shelves. (Mylum Dep. 40:21-22 ("[T]hat's the reason I missed the mirror, because I was looking at the shoes on the

---

[7] Because the Court grants summary judgment in Dillard's favor based on Mylum's contributory negligence, the Court need not reach the issue of Dillard's negligence, including Mylum's proffered expert opinion on Dillard's negligence.

upper shelves.").) She also admits that the mirror was visible and in plain sight from the direction she had traveled and from other locations in the shoe department. Considering the undisputed evidence and viewing this evidence in the light most favorable to Mylum, the mirror, as a matter of law, clearly constituted an open and obvious danger to a person exercising ordinary caution for his or her safety.[8]

The burden thus shifts to Mylum "to show conditions outside herself which prevented her seeing the dangerous condition or which would excuse her failure to observe it." *Fultz*, 677 S.E.2d at 275 (*citing S. Floors & Acoustics, Inc.*, 594 S.E.2d at 910-11). Mylum presents only evidence that her "attention was distracted by displayed merchandise." (Pl.'s Mem. Opp'n 12.)[9] "However, 'more is needed than a simple allegation of a distraction to create a jury issue. It [is] necessary for [the] plaintiff to establish that [her] excuse for inattention was reasonable, i.e., that the distraction was unexpected and substantial.'" *Fultz*, 677 S.E.2d at 275 (*quoting S. Floors & Acoustics, Inc.*, 594 S.E.2d at 910) (alterations in original); *see also Webber v. Speed Channel*,

---

[8] In arguing that "the mirror was not open and obvious from the perspective of a reasonable customer who was looking at shoes that were displayed on higher shelves" (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Mem. Opp'n") 3), Mylum misstates the law in Virginia. Under Virginia law, the Court must determine whether the dangerous condition was open and obvious to a reasonable person exercising ordinary care for his or her own safety. *Fultz*, 677 S.E.2d at 274.

Mylum also argues that the dangerous nature of the mirror would not be apparent to a reasonable person because they would not know "whether the mirror was bolted or otherwise attached to the floor or to the shelves." (Pl.'s Mem. Opp'n 4.) This argument does not persuade the Court because a reasonable person exercising ordinary care for his or her own safety would recognize the tripping hazard associated with the mirror regardless of whether or not the mirror was bolted or otherwise attached to the floor or shelves.

[9] Mylum also contends that "there is an issue of fact as to whether [her] attention was distracted . . . by her sudden, unexpected contact with a freestanding mirror that began to fall as soon as she made contact with it." (Pl.'s Mem. Opp'n 12.) However, the fact that she walked into the mirror cannot serve as a condition "outside herself" to excuse her failure to observe the mirror in the first place. *See Fultz*, 677 S.E.2d at 275.

*Inc.*, 472 F. Supp. 2d 752, 758 (E.D. Va. 2007). Mylum failed to cite, nor is this Court aware of, any Virginia cases holding that a display of merchandise in a store constituted an unexpected and substantial distraction. In fact, Virginia cases suggest the opposite.[10] *See supra* Part III.B; *see, e.g., Cameron*, 2010 WL 2991014, at *4 (looking for merchandise in a store does not constitute a sufficient distraction to create a jury issue as to contributory negligence); *Fultz*, 677 S.E.2d at 276 (finding that the use of an ATM and the sudden, unexpected movement of the plaintiff's young grandson constituted sufficient evidence of a substantial and unexpected distraction to create a jury issue as to contributory negligence); *S. Floors & Acoustics, Inc.*, 594 S.E.2d at 910-11 (finding that evidence of a store employee yelling and pointing at the plaintiff was sufficient to create a jury issue as to contributory negligence); *West v. City of Portsmouth*, 232 S.E.2d 763, 765, 767 (Va. 1977) (finding that customers entering and exiting an adjacent bakery insufficiently posed an unexpected and substantial distraction to create a jury issue as to contributory negligence). Ultimately, Mylum has failed to produce evidence of conditions which prevented her from seeing the mirror or would excuse her failure to see the mirror.

Mylum failed to exercise proper care to look where she was walking as she turned the corner. As Mylum admits, had she been looking, she would have seen the mirror and avoided its potential tripping hazard. "While it is true that [she] was not required to look constantly at the floor, she was not relieved of the duty to exercise ordinary care for her own safety and she cannot walk blindly into a dangerous condition which is open and obvious to a person in the exercise of ordinary care and then claim to be blameless." *Gall v. Great Atl. & Pac. Tea Co.*,

---

[10] Mylum's reliance on the Restatement (Second) of Torts § 343A does not persuade the Court otherwise. A review of Virginia cases on open and obvious conditions and contributory negligence demonstrates that Virginia law does not appear to adopt the portion of the Restatement regarding whether a possessor of land should anticipate harm from an open and obvious condition.

120 S.E.2d 378, 380 (Va. 1961). Mylum also admits that she would not have fallen had she not reached down to stop the mirror from falling. Because she failed to exercise reasonable care in paying attention to where she walked and because her own actions in reaching down to grab the mirror caused her to fall, the Court finds Mylum contributorily negligent as a matter of law. Her contributory negligence bars her from recovery against Dillard's.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Dillard's Motion for Summary Judgment. (Docket No. 15.)

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: <u>December 28, 2011</u>